GELDERMANN & COMPANY,
INC., Plaintiff,

v.

R. A. HARTLEY & SON, INC.,
Defendant.

No. 81 C 1146.

United States District Court,
N. D. Illinois, E. D.

Aug. 2, 1982.

Matthew J. Iverson, Abramson & Fox,
Chicago, Ill., for plaintiff.

Richard A. Marsh, Schumacher, Jones,
Vallely, Kelly & Olson, Chicago, Ill., for
defendant.

ORDER

BUA, District Judge.

This breach of contract action comes before the Court on the post-trial motions of both parties. Plaintiff's motion for judgment notwithstanding the verdict, Fed.R. Civ.P. 50(b), is granted, and its conditional motion for a new trial, Fed.R.Civ.P. 50(b), is denied. Plaintiff's motion for costs and attorney's fees is granted, and defendant's motion for a new trial on its counterclaims is denied.

I. *Judgment Notwithstanding the Verdict*

A. *Rule 50(b)*

Rule 50(b), Fed.R.Civ.P., governs directed verdicts and judgments notwithstanding the verdict. In the Seventh Cir-

cuit, it is well established that a motion for j.n.o.v. cannot be made unless a motion for directed verdict was made by the moving party at the close of all the evidence. 9 C. Wright & A. Miller, *Fed.Prac. & Pro.*, § 2537, at 596 (1971); *Pittsburgh—Des Moines Steel v. Brookhaven Manor Water Co.*, 532 F.2d 572, 575 (7th Cir. 1976). Defendant argues that plaintiff's motion for a directed verdict on the defendant's counterclaim, even if timely made and denied, is insufficient as a basis for judgment n.o.v. on plaintiff's complaint. The Court rejects this assertion. *Continental Air Lines, Inc. v. Wagner-Morehouse, Inc.*, 401 F.2d 23, 26–27 (7th Cir. 1968), the primary case relied on by defendant, is inapposite. That case dealt solely with the situation where no motion for a directed verdict was made on the principal cause of action. 401 F.2d at 26. In the instant case, defendant's counterclaims involve disputed conduct which directly affects the outcome of the principal cause of action. In light of this fact and the rule that a motion for directed verdict is adequate if it is made with "sufficient certainty to apprise the Court of the movant's position with respect to the motion." 9 Wright & Miller, § 2533 at 530; *Pstragowski v. Metropolitan Life Ins. Co.*, 553 F.2d 1, 3 (1st Cir. 1977), this Court finds plaintiff's motion for a directed verdict on defendant's counterclaim to be sufficient as a basis for plaintiff's j.n.o.v. motion on the underlying complaint.[1]

## B. *The Legal Standard for J.N.O.V.*

Defendant has offered no argument other than its procedural argument to counter plaintiff's j.n.o.v. motion. Since this Court finds that the facts and the law compel a finding that the jury verdict was erroneous, plaintiff's motion must be granted.

■ The Customer's Agreement ("the contract") which forms the basis for this action specifically provides that Illinois law governs any actions or proceedings arising out of the contract (contract, paragraph 23). In deciding whether to direct a verdict or enter a j.n.o.v. in a diversity case, the proper standard identified by the Seventh Circuit is that originally set out in *Pedrick v. Peoria and Eastern Railroad Co.*, 37 Ill.2d 494, 229 N.E.2d 504, (1967). *See Pittsburgh—Des Moines Steel Co. v. Brookhaven*, 532 F.2d at 577–78. The *Pedrick* standard states that "... verdicts ought to be directed and judgments n.o.v. entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." 37 Ill.2d at 510, 229 N.E.2d at 514.

■ This Court finds 1) that plaintiff's *prima facie* case was established and uncontradicted by any evidence in the record, and 2) that there is no support in the record for defendant's affirmative defenses. As a result, there is simply no support for the jury's finding against the plaintiff and in favor of defendant on the complaint.

Regarding the first finding, the evidence indicates that, pursuant to paragraph 8 of the contract, plaintiff acted fully within its rights in restricting trading by defendant for a period of approximately one hour on January 9, 1981, and in imposing a new set of restrictions effective as of the start of trading on Monday, January 12, 1981. This Court finds no vagueness nor ambiguity in paragraph 8 or any other part of the contract. Paragraph 8 reads in pertinent part, "Customer acknowledges Geldermann's right to limit the number of open positions which Customer may maintain or acquire through Geldermann...." Where there is no vagueness or ambiguity in a written contract, it will preclude any contrary implied agreement.

■ Regarding the Court's second finding, the defendant's affirmative defenses of waiver and estoppel have no support in the record, and, in fact, fly in the face of the

---

1. This finding is consistent with the well-established view that the courts should take a liberal approach to the question of whether a litigant has established a sufficient procedural basis for its j.n.o.v. motion, Wright & Miller, § 2537 at 596–7; *Moran v. Raymond Corp.*, 484 F.2d 1008, 1014 (7th Cir. 1973).

contract language. Plaintiff's actions at no time remotely resembled a waiver of either the required corporate authorization for Ted Hartley or the right to set margin requirements. Paragraph 19 makes explicit the fact that there can be no waiver or modification of a contract provision unless the waiver "be committed to writing and signed by Customer and an officer of Geldermann. The forebearance of Geldermann to take any remedial action ... shall not waive its right at any time, or from time to time thereafter to take such action." Even if waiver by plaintiff's conduct could be found, plaintiff's conduct would in no way restrict any later action on the allegedly waived right or provision. Paragraph 21 of the contract explicitly so provides.

Additionally, this Court finds that plaintiff acted properly and reasonably within the contract when it set new margin requirements and restrictions. Plaintiff's action, governed by paragraph 5 of the agreement, was a permissible attempt to restrict further losses resulting from defendant's heavy volume of speculative trading on hedge account margins (and, in some cases, no margins).

Finally, it is undisputed that defendant left an unpaid balance or debit when it liquidated its account with plaintiff. This finding, coupled with the foregoing, compels this Court's determination that plaintiff's *prima facie* case was established and uncontradicted. Therefore, this Court believes that the jury's verdict was improper and the entry of judgment notwithstanding that verdict is required.

II. *Plaintiff's Motion for Costs and Attorney's Fees*

Illinois law states that, in the absence of a statute or an agreement of the parties, a successful party may not recover attorney's fees or the costs of the litigation, *Harner v. Kirk*, 64 Ill.2d 434, 437, 1 Ill.Dec. 336, 356 N.E.2d 524 (1976). In the instant case, paragraph 3(3) of the contract requires defendant to "pay the interest and service charges on any customer service balances ... together with Geldermann's costs and attorney's fees incurred in collecting

any such deficit." Since this Court finds that this contract provision is clear and unambiguous and that this action involves the collection of a deficit left by defendant, this Court grants plaintiff an award of costs and attorney's fees in this action.

Judgment is accordingly entered in favor of plaintiff on the complaint and against defendant in the total amount of $21,447.76 (the amount of the debit balance in this account plus accrued interest calculated through August 30, 1981). Plaintiff is further awarded the costs of this lawsuit with the Court reserving for future resolution the matter of any attorney's fees and additional costs of litigation due and owing by defendant to plaintiff pursuant to the written contract between them.

IT IS SO ORDERED.